IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JEFFREY BUTLER,          )
          Plaintiff      )    Civil Action
                         )    No.   2014-cv-03733
     vs.                 )
                         )
LIEUTENANT CONRAD LAMONT, et al., )
          Defendants     )

## TABLE OF CONTENTS

                                                        Page

JURISDICTION.............................................  2

VENUE...................................................  3

PLAINTIFF'S CLAIMS......................................  3

PROCEDURAL HISTORY......................................  5

STANDARD OF REVIEW......................................  7

FACTS...................................................  9

DISCUSSION..............................................  17

     John and Jane Doe Guards and Supervisors.........  17

     Section 1983.......................................  20

          Count I.......................................  21

          Count II......................................  23

          Count III.....................................  25

          Count IV......................................  25

          Count V.......................................  27

          Count VI......................................  29

          Counts VII and VIII..........................  30

          Count IX......................................  30

          Count X.......................................  32

CONCLUSION..............................................  33

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JEFFREY BUTLER,                          )
                                         )    Civil Action
          Plaintiff                      )    No.  2014-cv-03733
                                         )
                                         )
          vs.                            )
                                         )
LIEUTENANT CONRAD LAMONT,                )
Individually, and in His                 )
Official Capacity as a                   )
Corrections Official;                    )
JOHN/JANE DOE GUARDS #1-X,               )
Individually, and in Their              )
Official Capacities as                   )
Corrections Officers;                    )
JOHN/JANE DOE Supervisors #1-X,          )
Individually, and in Their              )
Official Capacities as                   )
Prison Supervisory Personnel;            )
TODD BUSKIRK, Individually, and          )
in His Official Capacity as              )
Warden of Northampton County             )
Prison;                                  )
ARNOLD MATOS, Individually, and          )
in His Official Capacity as              )
Director of Corrections;                 )
JOHN STOFFA, Individually, and           )
in His Official Capacity as              )
County Executive; and                    )
THE COUNTY OF NORTHAMPTON,                )
                                         )
          Defendants                     )

                              *    *    *

APPEARANCES:

          BRIAN M. MONAHAN, ESQUIRE
               On behalf of Plaintiff

          DAVID J. MACMAIN, ESQUIRE
          NICOLE C. FREILER, ESQUIRE
               On behalf of Defendants

                              *    *    *

OPINION

JAMES KNOLL GARDNER,
United States District Judge

This matter is before the court on the Motion for
Summary Judgment of Defendants, Lieutenant Conrad Lamont, Todd
Buskirk, Arnold Matos, John Stoffa, and the County of Northampton
which motion was filed June 29, 2015.[1]  Plaintiff's Memorandum of
Law in Opposition to Defendants' Motion for Summary Judgment was
filed on July 27, 2015 ("Plaintiff's Memorandum of Law").[2]  For
the following reasons, I grant defendants' motion for summary
judgment and dismiss plaintiff's Complaint.

JURISDICTION

Jurisdiction is based upon federal question
jurisdiction pursuant to 28 U.S.C. § 1331.  Plaintiff brings
claims under 42 U.S.C. § 1983 for violations of the Fourth,
Eighth and Fourteenth Amendments to the United States
Constitution.  This court has supplemental jurisdiction over
plaintiff's pendent state-law claims.  See 28 U.S.C. § 1367.

---

[1]     Together with their motion for summary judgment, defendants filed
a memorandum of law in support of the motion and a statement of undisputed
material facts.

[2]     Together with Plaintiff's Memorandum of Law, plaintiff filed a
response to defendants' statement of undisputed material facts.  Defendants
filed a reply brief on August 12, 2015, and plaintiff filed a surreply brief
on September 15, 2015.

## VENUE

Venue is proper pursuant to 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred in Northampton County, Pennsylvania, which is located in this judicial district.

## PLAINTIFF'S CLAIMS

Plaintiff Jeffrey Butler brings this civil action pursuant to 42 U.S.C. 1983 ("Section 1983") and various state law causes of action. Specifically, on June 17, 2014 plaintiff filed his ten-count Complaint against defendants Lieutenant Conrad Lamont; John/Jane Doe Guards #1-X; John/Jane Doe Supervisors #1-X; Todd Buskirk, individually, and in his official capacity as the Warden of Northampton County Prison; Arnold Matos, individually, and in his official capacity as the Director of Corrections for the County of Northampton County, Pennsylvania; John Stoffa, individually and in his official capacity as the County Executive of Northampton County, Pennsylvania; and the County of Northampton.

In Count I, plaintiff alleges that all defendants violated his rights under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution and is brought pursuant to Section 1983. Specifically, plaintiff avers that defendants violated his rights to bodily integrity, freedom from unreasonable searches and seizures, freedom from cruel and unusual conditions of confinement, freedom from state-created

-3-

dangers and freedom from arbitrary conduct of governmental actors which shock the conscience.

Count II alleges a claim against defendants Lamont, Buskirk, and John and Jane Doe guards and supervisors for denial of medical care under Section 1983.

In Count III, plaintiff avers a claim against defendants Lamont, and John and Jane Doe guards and supervisors in their individual capacities for failure to intervene to prevent constitutional violations of plaintiff's federally protected rights pursuant to Section 1983.

Count IV of plaintiff's Complaint asserts a claim against defendants Lamont, Buskirk, Matos, Stoffa and John and Jane Doe supervisors in their individual capacities for supervisory liability under Section 1983 claiming that defendants, with deliberate indifference, either directed, had actual knowledge of, or maintained policies, practices or customs that directly caused, the violations of plaintiff's federally protected rights.

In Count V of his Complaint, plaintiff avers a derivative Section 1983 <u>Monell</u>[3] claim that defendant Northampton County and all the individual defendants in their official capacities, are liable for negligent training and supervision of

---

[3]     <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

prison employees as well as a claim of not properly screening prospective employees prior to hiring.

Count VI of plaintiff's Complaint alleges a civil conspiracy against all the individual defendants in their individual capacities under section 1983.

Count VII asserts a state-law claim for assault against defendants Lamont and John and Jane Doe guards.

In Count VIII of his Complaint, plaintiff avers a state-law claim of battery against defendants Lamont and John and Jane Doe guards.

Count IX of plaintiff's Complaint alleges a state-law claim of intentional infliction of emotional distress against all the individual defendants in their individual capacities.

Finally, Count X of plaintiff's Complaint avers a state-law claim of civil conspiracy against all the individual defendants in their individual capacities.

### PROCEDURAL HISTORY

Plaintiff initiated this action on June 17, 2014 by filing a Complaint against defendants. The Complaint alleges ten causes of action outlined above. The Answer of Defendants, Lieutenant Conrad Lamont, Todd Buskirk, Arnold Matos, John Stoffa and Northampton County to plaintiff's Complaint was filed on August 18, 2014.

By my Rule 16 Status Conference Order dated October 9,

-5-

2014 and filed October 16, 2014, I set numerous deadlines including a January 30, 2015 deadline for plaintiff "to file an amended complaint to specifically name individual defendants in place of the named John/Jane Doe defendants." In addition, among other deadlines, I set a March 16, 2015 fact discovery deadline, a June 29, 2015 dispositive motion deadline and an October 19, 2015 trial date.

By Order dated October 8, 2015 and filed October 14, 2015, the trial of this matter was continued until January 11, 2016.

On June 29, 2015 the Motion for Summary Judgment of Defendants, Lieutenant Conrad Lamont, Todd Buskirk, Arnold Matos, John Stoffa, and the County of Northampton was filed together with a memorandum of law in support of the motion.[4] On that date, defendants also filed a Statement of Material Undisputed Facts in Support of Defendants' Motion for Summary Judgment together with Exhibits A-R.[5]

Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment was filed on July 27, 2015.[6] That same date, Plaintiff's Response to Defendants' Statement of Purportedly Undisputed Facts in Support of Their

---

[4]      Docket Entry 24.

[5]      Docket Entry 25.

[6]      Docket Entry 29.

-6-

Motion for Summary Judgment was filed together with Exhibits A-J.[7]

On August 12, 2015 Defendants' Reply Brief in Further Support of Their Motion for Summary Judgment was filed.[8] Plaintiff's Sur-reply in Opposition to Defendants' Motion for Summary Judgment was filed September 15, 2015.[9]

On August 17, 2015, by Stipulation[10] of counsel for the parties, defendant Lieutenant Conrad Lamont was dismissed from this action with prejudice.

To date, plaintiff has not formally requested leave to amend his Complaint to replace defendants John/Jane Doe Guards #1-X; John/Jane Doe Supervisors #1-X with any specific named individuals.[11]

### STANDARD OF REVIEW

In considering a motion for summary judgment, the court must determine whether "the pleadings, depositions, answers to

---

[7]    Docket Entry 28.

[8]    Docket Entry 32.

[9]    Docket Entry 40.

[10]    Docket Entry 34.

[11]    In footnote 2 of Plaintiff's Memorandum of Law, he states: "The records show that a Lieutenant Dorsey was present.  Plaintiff could if necessary ask this Honorable Court to substitute Dorsey for one of the John/Jane Does originally named."  For the reasons expressed in the Discussion section below, I do not consider these two sentences contained in footnote 2 the equivalent of a timely amendment of his Complaint.

-7-

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). <u>See also</u> <u>Anderson v.</u> <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-2510, 91 L.Ed.2d 202, 211 (1986); <u>Federal Home Loan Mortgage</u> <u>Corporation v. Scottsdale Insurance Company</u>, 316 F.3d 431, 443 (3d Cir. 2003).

Only facts that may affect the outcome of a case are "material". Moreover, all reasonable inferences from the record are drawn in favor of the non-movant. <u>Anderson</u>, 477 U.S. at 255, 106 S.Ct. at 2513, 91 L.Ed.2d at 216.

Although the movant has the initial burden of demonstrating the absence of genuine issues of material fact, the non-movant must then establish the existence of each element on which it bears the burden of proof. <u>See</u> <u>Watson v. Eastman Kodak</u> <u>Company</u>, 235 F.3d 851, 857-858 (3d Cir. 2000).

Parties cannot avert summary judgment with speculation or by resting on the allegations in their pleadings; rather, they must present competent evidence from which a jury could reasonably find in their favor. <u>Ridgewood Board of Education v. N.E.</u> <u>for M.E.</u>, 172 F.3d 238, 252 (3d Cir. 1999); <u>Woods v. Bentsen</u>, 889 F.Supp. 179, 184 (E.D.Pa. June 14, 1995) (Reed, Jr., J.).

FACTS

Based upon the pleadings, record papers, exhibits, depositions and the parties' statement of facts, the relevant facts, viewed in the light most favorable to plaintiff, are as follows.

On May 17, 2012 plaintiff was incarcerated at Northampton County prison as a result of pending charges. At the time of his incarceration, plaintiff was taking prescription medications to treat various medical issues including a heart problem, diabetes, depression and anxiety.

After approximately three weeks of incarceration, plaintiff began suffering from insomnia and anxiety and as a result, was seen by someone from PrimeCare Medical, the non-party medical provider contracted by Northampton County to provide medical care to inmates at Northampton County Prison. Plaintiff was prescribed a new medication to help control his symptoms, but sometime after being prescribed the medication, plaintiff began suffering from hallucinations.

According to plaintiff, he was being housed in cell G-25 and hallucinated that a friend and his friend's infant children, a two-year-old and a three-year-old, were in the wall and could not breathe. Because these persons in the wall could not get out, plaintiff was attempting to get them out of the wall.

-9-

On June 18, 2012 plaintiff was seen by a PrimeCare Medical staff member for a mental health/suicide observation. During that visit, the staff member described plaintiff as "anxious" and "verbally hostile". A corrections officer also observed plaintiff banging on the bars of his cell, that plaintiff would not look the medical observer in the eye, and that plaintiff was not following orders. Moreover, plaintiff questioned the status of his medications by stating that his "meds ended" and "they took them away".

As a result of plaintiff's behavior on June 18, 2012, and his worries that his medications were changed, plaintiff was placed on suicide watch level two but was not transported to a suicide cell.

The following day, June 19, 2012, during another mental health/suicide observation, it was noted that plaintiff, who was described as "very anxious, hallucinating, [and] hostile", was found on the floor of his cell yelling "get the children out of the wall. I can't get them." At that time plaintiff was still in cell G-25, not a suicide cell.

On June 20, 2012, at approximately 1:45 a.m., plaintiff was observed in his cell yelling about saving the children that were stuck in his cell wall. The medical department was contacted, and after observing plaintiff's behavior, Nurse

-10-

Colleen Bowling ordered plaintiff to be put on suicide watch level one.  Plaintiff was then placed in handcuffs and transported to a suicide cell, cell H-10.

After arriving at cell H-10, plaintiff was in the company of corrections officers Eddie Castillo, Vincent Mistretta, William Fox and Thomas Radcliffee, together with Lieutenant Dorsey.  The corrections officers requested plaintiff to remove his clothing.  The parties dispute whether plaintiff voluntarily took his clothes off or was forced to do so by the corrections officers.

Plaintiff was taken from cell G-25 and taken to "the hole" and was placed in a cell with another inmate.  Plaintiff stated he was unsure in what order certain things happened.  His best recollection is that he laid down for a few minutes after being taken to cell H-10, but the other inmate in the cell was "doing disgusting things; urinating on the floor, masturbating".  Plaintiff then got into a verbal confrontation with that inmate, and the other inmate was removed from the cell.

Soon thereafter, corrections officers came to the cell door and requested plaintiff to take off his clothing.  Plaintiff voluntarily took off all his clothes, despite being handcuffed, except for his Saint Christopher medallion, which he wears for religious reasons.  Plaintiff was told by an unnamed corrections officer that if he did not remove the Saint Christopher

-11-

medallion, it would be torn off of him.  Plaintiff then
voluntarily took off the medallion.  Plaintiff passed his
clothing, including the medallion, through the closed cell door.

Several minutes after he passed his clothing to the
corrections officers, numerous corrections officers (somewhere
between two and ten), dressed in riot gear (black pants with knee
pads, elbow pads and helmets), including one officer with a big
shield, entered the cell and proceeded to assault plaintiff for a
few minutes.  Plaintiff contends that he was struck numerous
times and suffered three broken ribs and bruising all over his
body.

Plaintiff alleges that at the end of the attack, a
light-skinned black man came into the cell, who plaintiff
believes to be the other officers' superior, looked at plaintiff
and made a motion with his finger going in circles near his
temple that plaintiff believes indicated that plaintiff was
crazy.

Sometime thereafter, a nurse came into the cell and
gave plaintiff medication which made him sleep.  Whenever he
awoke, he complained that the officers broke his ribs, and
someone would come in and give him medication which put him back
to sleep.  Plaintiff contends that he was not given any medical
attention until several days later when he was taken for an x-ray
of his chest.

-12-

Finally, plaintiff contends that he was left naked in the cell until he was taken for the x-ray, when he was placed in what he called the "green turtle suit" to go for the x-ray. Plaintiff described the green turtle suit as the padded suit they use when one is in the hole for suicide.

Defendants contend that on June 20, 2012 plaintiff was taken in handcuffs to suicide cell H-10 at the direction of Nurse Bowling. Upon arriving at cell H-10 plaintiff was advised that he would need to remove his clothing. Plaintiff then began making verbal threats to Officers Castillo, Mistretta, Fox and Radcliffee. When asked by Officer Castillo to stand up, plaintiff did so but then attempted to headbutt Officer Mistretta.

As a result of the attempted headbutt, plaintiff was placed on the ground and restrained. His clothing was removed and he was instructed by Lieutenant Dorsey to calm down. Defendants contend that after a few minutes, plaintiff calmed down, was given a suicide suit, examined by the medical staff and given medication and the handcuffs were removed. Defendants contend that the officers exited the cell without further incident. The medical staff noted at that time that plaintiff had no visible injuries.

Later that morning, at approximately 3:21 a.m., plaintiff was observed upright on his bunk. Plaintiff was asked

-13-

how he was, and he responded that he was fine, but that his ribs hurt. No bruises were observed at that time.

Between 8:50 a.m. and 9:05 a.m., on June 20, 2012, PrimeCare Mental Health Clinician Catherine Fliszar observed plaintiff. She noted that plaintiff was talking to the walls, yelling to people who Ms. Fliszar could not see, banging on the walls and windows, yelling that people were coming out of the walls, and experiencing a multitude of other delusions and hallucinations.

Ms. Fliszar also noted that plaintiff was in an acute, psychotic state, with auditory and visual hallucinations, delusions, disorganized thinking, loose associations, incoherent speech and rapid speech. She further described plaintiff as completely out of touch with reality, irrational and unable to verbally de-escalate. At that time, Ms. Fliszar contacted nursing staff to contact a psychiatrist for an immediate prescription and possible restraint chair order.

Between 9:50 a.m. and 10:00 a.m. on June 20, 2012 plaintiff was again observed by Ms. Fliszar, who described plaintiff to be in an acute psychotic state. She stated that plaintiff yelled, screamed, experienced auditory and visual hallucinations, was delusional, paranoid, hostile, labile, verbally and physically aggressive, was completely out of touch with reality, and could not be de-escalated.

-14-

Later that morning, at approximately 10:45 a.m., plaintiff was observed by the medical staff to be behaving irrationally in his cell and refusing to take his medication. Corrections officers were notified by the medical staff that plaintiff needed to be given a shot of medication. Plaintiff was describing being very erratic and that he did not seem to be aware of what or who was talking to him. After several failed attempts to diffuse the situation, and pursuant to orders from PrimeCare Medical staff, Lieutenant Boushell called for the CERT team to be assembled to remove plaintiff from his cell and place him in a restraint chair.

Thereafter, plaintiff was removed from his cell and placed in a restraint chair, where he received a medication injection from the medical staff. Plaintiff remained in the restraint chair for one hour and was observed several times by Ms. Fliszar.

The next day, June 21, 2012, plaintiff was seen by PrimeCare Medical Physician's Assistant Jennifer Mroz. During this visit, plaintiff complained to Ms. Mroz that he was suffering from shoulder and rib pain. Ms. Mroz also noted that plaintiff had contusions on his arms and shoulder, but observed no edema or swelling. Ms. Mroz ordered an x-ray of plaintiff's right shoulder and right rib area to be completed the same day.

-15-

An x-ray was taken but revealed no fractures.  The radiology report noted that the result was "limited" because of underexposure technique.[12]

Early the next morning, June 22, 2012, at approximately 1:25 a.m., plaintiff was involved in an altercation with his cellmate.  The parties disagree about the details of the altercation.  Plaintiff contends that the altercation was only verbal.  Defendants contend that plaintiff and his cellmate, Daniel Rodriguez were involved in a fistfight.  The medical staff noted that neither of them had any injuries.

Later that day, Ms. Fliszar checked on plaintiff at approximately 8:30 a.m., and noted that plaintiff claimed his ribs were broken.  Plaintiff also repeatedly asked Ms. Fliszar to give him the "McDonalds bag" on the food cart.  Ms. Fliszar showed plaintiff that the the bag was not a "McDonalds bag" And plaintiff became agitated and refused to speak to her anymore.  Ms. Fliszar further noted that plaintiff was easily agitated and delusional with disorganized thoughts.  She further noted that plaintiff continued to be acutely psychotic.

On June 23, 2012 plaintiff was released from Northampton County Prison.  Upon his release, plaintiff was escorted home by his girlfriend Lisa Labar, a registered nurse

---

[12]See paragraph 32 of Plaintiff's Response to Defendants' statement of Purportedly Undisputed Facts in Support of Their Motion for Summary Judgment.

-16-

and an acquaintance, Debra Futchko, a licensed practical nurse.
Both Ms. Labar and Ms. Futchko observed that plaintiff could not
easily walk, that he was badly bruised from head to toe and that
he was having trouble breathing. Ms. Futchko further observed
that plaintiff was in pain on his right side.  Ms. Labar observed
bruises on plaintiff's face, head, arms and legs.

Finally, on July 4, 2012, plaintiff had an x-ray taken
by his personal physician which indicated that plaintiff had
three broken ribs.

### DISCUSSION

### John and Jane Doe Guards and Supervisors

Federal Rule of Civil Procedure 21 provides in
pertinent part: "On motion or on its own, the court may at any
time, on just terms, add or drop a party."

In a non-precedential Opinion in <u>Blakeslee v. Clinton</u>
<u>County</u>, 336 Fed.Appx. 248, 250 (3d Cir. 2009) the United States
Court of Appeals for the Third Circuit stated that Jane Doe
defendants must be dismissed if "reasonable discovery does not
unveil the proper identities".  Courts in this judicial district
have held that when reasonable steps are not taken to identify
John or Jane Doe defendants and to amend the complaint to
substitute identified parties for such defendants when their
identity is discovered, the claims against John or Jane Doe

-17-

defendants must be dismissed with prejudice.   Ayres v. Berks County Sheriff's Department, 2010 U.S.Dist.LEXIS 22119, at *4 (E.D.Pa. March 10, 2010) (Perkin, M.J.); Williams v. Lower Merion Township,1995 U.S.Dist. LEXIS 11083, at *9-10 (E.D.Pa. Aug. 2, 1995) (Kelly, J.).

In this case, by my Rule 16 Status Conference Order dated October 9, 2014 and filed October 16, 2014, I set numerous deadlines including a January 30, 2015 deadline for plaintiff "to file an amended complaint to specifically name individual defendants in place of the named John/Jane Doe defendants."

In footnote 2 of Plaintiff's Memorandum of Law, he states: "The records show that a Lieutenant Dorsey was present. Plaintiff could if necessary ask this Honorable Court to substitute Dorsey for one of the John/Jane Does originally named."

In Defendants' Reply Brief in Further Support of Their Motion for Summary Judgment ("Defendants' Reply Brief"), defendants argue that Lieutenant Dorsey may not be added as a party to this action because plaintiff failed to file an amended complaint by my January 30, 2015 deadline.[13]   I agree.

The record reveals that plaintiff is aware of the identity of numerous corrections officers named in the reports prepared by the officers detailing the events of June 20-22,

---

[13]     Defendants' Reply Brief at pages 1 and 2.

2012.[14]  These include corrections officers Eddie Castillo,
Vincent Mistretta, William Fox and Thomas Radcliffee.  However,
plaintiff has neither named nor sought to name any of these
corrections officers in place of any John Doe guard defendants.

In addition, plaintiff also knew the identity of
Lieutenant Dorsey and has not named nor sought to add him as a
defendant in place of a John Doe supervisor defendant beyond his
statement in footnote 2 of Plaintiff's Memorandum of Law.  I gave
plaintiff leave to file a surreply to Defendant's Reply Brief,
and plaintiff did not address this issue notwithstanding
defendants raising the issue in their reply brief.

Plaintiff has been aware of the identity of four John
Doe guard defendants, corrections officers Eddie Castillo,
Vincent Mistretta, William Fox and Thomas Radcliffee, for more
than one year,[15] yet has not requested leave to amend his
Complaint to substitute their names for two John Doe guard
defendants.  Pursuant to the holdings in Ayres and Williams,
supra, plaintiff has no claims against Officers Castillo,
Mistretta, Fox or Radcliffee in any capacity because plaintiff
has not made reasonable efforts to amend his Complaint to add

---

[14]     See Defendant's Reply Brief at page 2; Plaintiff's Memorandum of
Law at page 4, footnote 2; Exhibits F, G, K, O, P and Q to defendants'
Statement of Material Undisputed Facts in Support of Defendants' Motion for
Summary Judgment; Exhibits A and D to Plaintiff's Response to Defendants'
Statement of Purportedly Undisputed Facts in Support of their Motion for
Summary Judgment.

[15]     See above, footnote 14.

-19-

their names as substitutes for the John and Jane Doe guard defendants named in his Complaint.

Regarding Lieutenant Dorsey, I conclude that the statement in footnote 2 of Plaintiff's Memorandum of Law does not constitute a motion to amend his Complaint. Moreover, even if I were to construe his statement as a motion to amend, I conclude that plaintiff has provided no reason why he was unable to amend prior to my January 30, 2015 deadline.

Under the rationale of Blakeslee, supra, I dismiss the remaining John and Jane Doe guards and supervisors with prejudice because reasonable discovery has not led to their identification.

### Section 1983

Plaintiff's constitutional claims are actionable against defendants through 42 U.S.C. § 1983. Section 1983 is an enabling statute that does not create any substantive rights, but provides a remedy for the violation of federal constitutional or statutory rights. Gruenke v. Seip, 225 F.3d 290, 298 (3d Cir. 2000). Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

. Thus, to state a claim under Section 1983, a plaintiff must demonstrate that a defendant, acting under color of state law, deprived plaintiff of a federal constitutional or statutory right. Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420, 428 (1986); Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008) (quoting Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006)).

A defendant acts under color of state law when he exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." West v. Atkins, 487 U.S. 42, 49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40, 49 (1988); Bonenberger v. Plymouth Township, 132 F.3d 20, 23 (3d Cir. 1997).

### Count I

In Count I of his Complaint, plaintiff alleges that all defendants violated his rights under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution. Specifically, plaintiff avers that defendants violated his rights to bodily integrity, freedom from unreasonable searches and seizures, freedom from cruel and unusual conditions of confinement, freedom from state-created dangers and freedom from arbitrary conduct of governmental actors which shock the conscience.

-21-

Because Lieutenant Conrad Lamont was dismissed with prejudice by agreement of the parties on August 17, 2015 and because I dismissed all the John and Jane Doe guards and supervisors with prejudice, the only remaining individual defendants in this action are defendants Todd Buskirk, Arnold Matos and John Stoffa.

To find a defendant liable under Section 1983, that defendant must have some personal involvement in the alleged wrongdoing. See, e.g., Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 1990). Here there are no allegations or evidence that defendants Buskirk, Matos or Stoffa had any involvement in the alleged assault of plaintiff which forms the basis for his claims in Count I of his Complaint.

As noted above, to state a claim under Section 1983, a plaintiff must demonstrate that a defendant, acting under color of state law, deprived plaintiff of a federal constitutional or statutory right. Parratt, supra. Moreover, under the forgoing standard of review of a motion for summary judgment, parties cannot avert summary judgment with speculation or by resting on the allegations in their pleadings. Rather, they must present competent evidence from which a jury could reasonably find in their favor. Ridgewood, supra.

Because plaintiff has not identified a defendant who has any personal involvement in the alleged wrongdoing, I

-22-

conclude that no jury could find any person liable for violating plaintiff's constitutional rights.

Accordingly, I grant defendants' motion for summary judgment on Count I of plaintiff's Complaint.

### Count II

In Count II of plaintiff's Complaint, he alleges a claim against defendants Lamont, Buskirk, and John and Jane Doe guards and supervisors for denial of medical care under Section 1983. As noted above, defendants Lamont, and John and Jane Doe guards and supervisors have already been dismissed. Thus, the only remaining defendant in Count II is defendant Buskirk.

It is well-settled that "deliberate indifference to a prisoner's serious illness or injury" violates the Eighth Amendment and "states a cause of action under § 1983." Estelle v. Gamble, 429 U.S. 97, 105, 97 S.Ct. 285, 291, 50 L.Ed.2d 251, 260 (1976). To establish a claim for denial of medical care, a plaintiff must show that prison officials were deliberately indifferent and that his medical needs were serious. West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978).

To survive a motion for summary judgment, plaintiff must also produce sufficient evidence that defendant's actions were the proximate cause of his injuries. Malles v. Lehigh County, 639 F.Supp.2d 566, 576 (E.D.Pa. 2009)(Dalzell, J.).

Negligence in diagnosis or treatment and disagreements

-23-

concerning medical judgment do not suffice to establish a constitutional violation. Estelle, supra. Furthermore, "prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993).

Plaintiff alleges no personal involvement of defendant Buskirk in his receiving medical care. Rather, what plaintiff complains of is that he did not get medical care for his three broken ribs.

The record is clear that plaintiff was being seen by the medical staff at the prison regularly, multiple times a day, from June 18, 2012 until he was released on June 23, 2012. He was assessed for both his mental and physical injuries. He complained about his ribs and shoulder hurting and he was given an x-ray at the prison. That x-ray did not show any fracture.

At best, plaintiff alleges a claim for negligent diagnosis of his rib fractures. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a claim under the Eighth Amendment." Estelle, 429 U.S. at 106, 97 S.Ct. at 292, 50 L.Ed.2d at 261.

Because plaintiff clearly received medical care in this case and at best all he can allege is negligent treatment, plaintiff has not established a genuine issue of material fact that his constitutional rights were violated. Moreover,

-24-

plaintiff has no evidence that defendant Buskirk had any input into his medical care or interfered with him receiving any care.

Accordingly, I grant defendants' motion for summary judgment regarding Count II and dismiss it from plaintiff's Complaint.

### Count III

In Count III of his Complaint, plaintiff avers a claim against defendants Lamont, and John and Jane Doe guards and supervisors in their individual capacities for failure to intervene to prevent constitutional violations of plaintiff's federally protected rights pursuant to Section 1983.

Because Lieutenant Conrad Lamont was dismissed with prejudice by agreement of the parties on August 17, 2015 and all the John and Jane Doe guards and supervisors were dismissed with prejudice by me above, there are no remaining defendants involved regarding Count III.

Accordingly, I grant defendants' motion for summary judgment on Count III and dismiss Count III from plaintiff's Complaint.

### Count IV

Count IV of plaintiff's Complaint asserts a claim against defendants Lamont, Buskirk, Matos, Stoffa, and John and Jane Doe supervisors in their individual capacities for supervisory liability under Section 1983 claiming that defendants,

with deliberate indifference, either directed, had actual
knowledge of, or maintained policies, practices or customs that
directly caused the violations of plaintiff's federally protected
rights.

As noted above, all claims against defendants Lamont
and John and Jane Doe supervisors have been dismissed.  That
leaves a claim by plaintiff for supervisory liability only
against defendants Buskirk, Matos and Stoffa.

"Supervisory liability cannot be based solely upon the
doctrine of respondeat superior."  Andrews v. City of
Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990).  For plaintiff
to render defendants personally liable pursuant to Section 1983
plaintiff must show that defendants participated in violating his
rights, or that they directed others to violate them, or that
they as the people in charge, had knowledge of, and acquiesced
in, their subordinates' violations.  Baker v. Monroe Township,
50 F.3d 1186, 1190-1191 (3d Cir. 1995); Andrews, supra.

In this case, plaintiff has no evidence that defendants
Buskirk, Matos and Stoffa had any knowledge of the alleged
assault of plaintiff while he was incarcerated at Northampton
County prison, or knowledge that defendants were personally
involved in, directed, or acquiesced to, it.  Because there is no
evidence that defendants Buskirk, Matos and Stoffa participated
in, directed, or acquiesced to, the events to which plaintiff

-26-

complains, they could not have been deliberately indifferent to any alleged consequences suffered by plaintiff.

Moreover, because I have already dismissed Counts I through III, there are no underlying violations which defendants failed to address in their respective supervisory roles.

Accordingly, I grant defendant's motion for summary judgment regarding Count IV of plaintiff's Complaint and dismiss Count IV with prejudice.

### *Count V*

In Count V of his Complaint, plaintiff avers a derivative Section 1983 <u>Monell</u> claim that defendant Northampton County and all the individual defendants in their official capacities, are liable for negligent training and supervision of prison employees. He also avers a claim that defendants did not properly screen prospective employees prior to hiring them.

The United States Supreme Court has held that suing a municipal or government official in his official capacity is the functional equivalent of suing the municipality and, thus, is redundant. <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); <u>Farrell v. Northampton County</u>, 2015 U.S.Dist LEXIS 100847 (E.D.Pa. Aug. 3, 2015 (DuBois, S.J.).

Therefore, the claims against defendants Buskirk, Matos and Stoffa in their official capacities are each dismissed from

-27-

Count V.   Therefore, I address Count V as to defendant Northampton County only.

A municipality can be held liable only where one of its employees is primarily liable under Section 1983.   Monell, supra. Furthermore, a municipality cannot be liable under Section 1983 under a theory of respondeat superior.   Rather, it is when execution of a municipal policy or custom, whether by its policymakers, or by acts that may fairly be said to represent official policy, inflicts the injury, that a municipality as an enitty is responsible under section 1983.   Id.

Thus, to establish a constitutional claim against a municipality, plaintiff must first establish that a constitutional violation was committed by one its employees.   It is well-settled that if there is no violation in the first place, there can be no derivative municipal liability claim.   City of Los Angeles v. Heller, 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806, 810-811 (1986).

Here, because plaintiff has not established an underlying constitutional violation, plaintiff cannot establish municipal liability under Monell and its progeny.

Therefore, I grant defendants' motion for summary judgment on Count V of plaintiff's Complaint and dismiss Count V with prejudice.

*Count VI*

Count VI of plaintiff's Complaint alleges a civil conspiracy under section 1983 against all the individual defendants in their individual capacities.  The only individual defendants remaining are defendants Buskirk, Matos and Stoffa.

To establish a claim under section 1983, plaintiff must demonstrate "(1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy."  Eichelman v. Lancaster County, 510 F.Supp.2d 377, 392 (E.D.Pa. 2007)(Strawbridge, M.J.).  To prevail on a conspiracy claim, plaintiff must present evidence of an agreement, as that is the *sine qua non* of a conspiracy.  Spencer v. Steinman, 968 F.Supp. 1011, 1020 (E.D.Pa. 1997)(Robreno, J.).

Here, plaintiff has presented no evidence of an agreement between defendants Buskirk, Matos and Stoffa, or any combination of them, nor that they had any knowledge of plaintiff or his allegations prior to the filing of this action.  In addition, plaintiff also fails to establish any deprivation of his civil rights as a result, or in furtherance of, any alleged conspiracy.

Accordingly, because plaintiff has not satisfied his burden of establishing a genuine issue of material fact on either

-29-

element of a Section 1983 conspiracy, I grant defendants' motion
for summary judgment regarding Count VI of plaintiff's Complaint
and dismiss Count VI with prejudice.

### *Counts VII and VIII*

Count VII of plaintiff's Complaint asserts a state-law
claim for assault against defendants Lamont and the John and Jane
Doe guards.

In Count VIII, plaintiff avers a state-law claim of
battery against defendants Lamont and the John and Jane Doe
guards.

Because Lieutenant Lamont was dismissed with prejudice
by agreement of the parties on August 17, 2015 and all the John
and Jane Doe guards were dismissed with prejudice by me above,
there are no remaining defendants involved regarding Counts VII
and VIII.

Accordingly, I grant defendants' motion for summary
judgment on Counts VII and VIII and dismiss those counts from
plaintiff's Complaint with prejudice.

### *Count IX*

Count IX of plaintiff's Complaint alleges a state-law
claim of intentional infliction of emotional distress against all
the individual defendants in their individual capacities.  The
only individual defendants remaining in this claim are defendants
Buskirk, Matos and Stoffa.

-30-

The tort of intentional infliction of emotional distress is defined under Pennsylvania law as: "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Shaner v. Synthes, 204 F.3d 494, 507 (3d Cir. 2000).

Courts are generally wary of allowing recovery for claims of intentional infliction of emotional distress and liability will only be found where "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." Fox v. Horn, 2000 U.S.Dist. LEXIS 432 at *25-26 (E.D.Pa. Jan. 21, 2000)(Buckwalter, J.).

Here, plaintiff has not offered any evidence that defendants Buskirk, Matos and Stoffa have acted in a way that could possibly be described as extreme, outrageous or beyond the possible bounds of decency. In fact, plaintiff has provided no evidence of any knowledge or actions taken by any of these defendants in any respect.

In addition, to sustain a claim for intentional infliction of emotional distress, plaintiff must have competent expert medical testimony to support his claims, particularly the

-31-

necessary element of "bodily harm".  <u>Kazatsky v. King David</u>
<u>Memorial</u>, 515 Pa. 183, 527 A.2d 988 (Pa. 1987).  As noted by the
Supreme Court of Pennsylvania:

> It is basic to tort law that an injury is an
> essential element to be proven.  Given the
> advanced state of medical science, it is unwise
> and unnecessary to permit recovery to be
> predicated on an inference based on the
> defendant's "outrageousness" without expert
> medical confirmation that the plaintiff actually
> suffered the claimed distress.  Moreover, the
> requirement of some objective proof of severe
> emotional distress will not present an
> insurmountable obstacle to recovery.  Those truly
> damaged should have little difficulty in procuring
> reliable testimony as to the nature and extent of
> their injuries.

515 Pa. at 197, 527 A.2d at 995.

Plaintiff has submitted no evidence that he has
obtained expert medical testimony to support his claim for
emotional distress.  Thus, he cannot establish damages on his
claim for intentional infliction of emotional distress.

Accordingly, I grant defendants' motion for summary
judgment on Count IX and dismiss Count IX from plaintiff's
Complaint with prejudice.

### Count X

Count X of plaintiff's Complaint avers a state-law
claim of civil conspiracy against all the individual defendants
in their individual capacities.  The only individual defendants
remaining are defendants Buskirk, Matos and Stoffa.

A claim for civil conspiracy under Pennsylvania law is

-32-

similar to a claim under Section 1983.   Under Pennsylvania law,
plaintiff must show (1) a combination of two or more persons
acting with a common purpose to do an unlawful act or to do a
lawful act by unlawful means or for an unlawful purpose;
(2) an overt act done in furtherance of the common purpose; and
(3) actual legal damage.   <u>Philips v. Selig</u>, 959 A.2d 420, 437
(Pa.Super. 2008).

   Here, plaintiff has the same problem that he had in his
Section 1983 conspiracy claim.   That is, he has no evidence of an
agreement between, or among, defendants Buskirk, Matos and
Stoffa.   Thus, I conclude for the same reasons articulated on
plaintiff's Section 1983 conspiracy claim, that plaintiff cannot
avert summary judgment.

   Accordingly, I grant defendants' motion for summary
judgment on Count X and dismiss Count X from plaintiff's
Complaint with prejudice.

CONCLUSION

   For all the foregoing reasons, I grant the Motion for
Summary Judgment of Defendants, Lieutenant Conrad Lamont, Todd
Buskirk, Arnold Matos, John Stoffa, and the County of Northampton
and dismiss plaintiff's Complaint in its entirety.

-33-