IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JEFFREY BUTLER,                         :
                                        :
            Plaintiff,                  :        CIVIL ACTION NO. 14-3733
                                        :
      v.                                :
                                        :
THE COUNTY OF NORTHAMPTON,              :
                                        :
            Defendant.                  :

## MEMORANDUM OPINION

Smith, J.                                                    August 15, 2017

Under *Monell v. New York City Department of Social Services,* 436 U.S. 658 (1978), a

plaintiff may only hold a municipality liable for a constitutional deprivation under 42 U.S.C. §

1983 where the alleged deprivation arises from a policy or custom that amounts to deliberate

indifference to constitutional rights.  The plaintiff, a former inmate, has sued the defendant, a

municipality, under § 1983 for an alleged beating he endured while incarcerated, contending that

the beating violated his constitutional rights.  He asserts that the defendant's policy or custom of

failing to properly train and supervise its corrections officers caused the deprivation of his rights.

The defendant filed a motion for summary judgment, which the plaintiff opposes.  Because the

plaintiff has failed to point to record evidence establishing a policy or custom, and has failed to

demonstrate that the alleged policy or custom caused his injuries, the court will grant the

defendant's motion for summary judgment.

## I.        FACTUAL RECORD AND PROCEDURAL HISTORY

The plaintiff, Jeffrey Butler ("Butler"), was incarcerated at the Northampton County Jail

("NCJ") on May 17, 2012.  Statement of Material Undisputed Facts in Supp. of Def.'s Renewed

Mot. for Summ. J. ("Def.'s Facts") at ¶ 1, Doc. No. 66; Plaintiff's Resp. to Def.'s Statement of

Purportedly Undisputed Facts ("Pl.'s Facts") at ¶ 1, Doc. No. 68.  At the time, Butler was taking

prescription medications for a heart problem, diabetes, depression, and anxiety.  Def.'s Facts at ¶

2; Pl.'s Facts at ¶ 2.  After about three weeks of incarceration, Butler began suffering from

insomnia and anxiety.  Def.'s Facts at ¶ 3; Pl.'s Facts at ¶ 3.  A staff member from PrimeCare

Medical, the non-party medical provider at NCJ, saw Butler and prescribed medication to control

his symptoms.  Def.'s Facts at ¶ 3; Pl.'s Facts at ¶ 3.

At some point after being prescribed the new medication, Butler began experiencing

hallucinations.  Def.'s Facts at ¶ 4; Pl.'s Facts at ¶ 4.  Butler hallucinated that his friend and

infant children were in his cell wall and could not breathe or get out.  Def.'s Facts at ¶ 5; Pl.'s

Facts at ¶ 5.  A PrimeCare staff member performed a mental health and suicide observation on

June 18, 2012, and during that observation, described Butler as "anxious" and "verbally hostile."

Def.'s Facts at ¶ 6; Pl.'s Facts at ¶ 6.  The PrimeCare staff member also noted that Butler was

banging on the bars of his cell, would not look the staff member in the eye, was not following

orders, and was questioning the status of his medications.  Def.'s Facts at ¶ 6; Pl.'s Facts at ¶ 6.

Butler was then placed on suicide watch level two (but was not transported to a suicide cell) due

to irrational behavior and his worry that his medications had been changed.  Def.'s Facts at ¶ 7;

Pl.'s Facts at ¶ 7.  The following day, on June 19, 2012, during another observation, Butler was

described as "very anxious, hallucinating, and hostile," and he was found on the floor of his cell

yelling "get the children out of the wall."  Def.'s Facts at ¶ 8; Pl.'s Facts at ¶ 8.

At approximately 1:45 a.m. on June 20, 2012, Butler was in his cell yelling about saving

the children stuck in the cell wall.  Def.'s Facts at ¶ 9; Pl.'s Facts at ¶ 9.  Nurse Colleen Bowling

ordered that he be placed on suicide watch level one, and he was accordingly transported to a

suicide cell.  Def.'s Facts at ¶¶ 10, 11; Pl.'s Facts at ¶¶ 10, 11.  Butler's clothes, including a

religious medallion, were removed.[1]  Def.'s Facts at ¶¶ 12, 13; Pl.'s Facts at ¶¶ 12, 13.  The

officers then removed Butler's handcuffs and exited the cell, and a PrimeCare staff member gave

him medication.  Def.'s Facts at ¶ 14; Pl.'s Facts at ¶ 14.

Later that day, Nurse Bowling observed Butler sitting upright on his bunk.  Def.'s Facts

at ¶ 15; Pl.'s Facts at ¶ 15.  Butler reported pain in his ribs, but he was wearing a suicide gown

and Nurse Bowling observed no bruises on him at that time.  Def.'s Facts at ¶¶ 15, 16; Pl.'s Facts

at ¶¶ 15, 16.

PrimeCare Mental Health Clinician Catherine Filszar ("Filszar") observed Butler

between 8:50 a.m. and 9:05 a.m. and noted that he was talking to the walls, banging on the walls

and windows, and yelling about people coming out of the walls.  Def.'s Facts at ¶ 17; Pl.'s Facts

at ¶ 17.  Fliszar also noted that Butler presented in "an acute, psychotic state, with auditory and

visual hallucinations, delusions, disorganized thinking, loose associations, incoherent speech,

[and] rapid speech."  Def.'s Facts at ¶ 18; Pl.'s Facts at ¶ 18.  Butler seemed "completely out of

touch with reality, irrational, and unable to verbally deescalate."  Def.'s Facts at ¶ 19; Pl.'s Facts

at ¶ 19.  Fliszar contacted the nursing staff to "contact [a] psychiatrist for stat PRN and possible

restraint chair order."  Def.'s Facts at ¶ 20; Pl.'s Facts at ¶ 20.

Fliszar returned to observe Butler sometime between 9:50 a.m. and 11:00 a.m. and

described him as in an "acute psychotic state.  He yelled, screamed, experienced auditory and

visual hallucinations, was delusional, paranoid, hostile, labile, verbally and physically aggressive

---

[1] The parties dispute whether Butler refused to remove his clothes, or whether corrections officers removed his
clothes for him.  *See* Def.'s Facts at ¶¶ 12, 13; Pl.'s Facts at ¶¶ 12, 13.  The County contends that Butler refused to
remove his clothes to put on the suicide gown, and Butler attempted to head-butt an officer.  Def.'s Facts at ¶ 12.
The officers then placed him on the ground and removed his clothes.  *Id.* at ¶ 12.  Butler contends that he managed
to remove his clothes while handcuffed, but asked to retain his Saint Christopher medallion.  Pl.'s Facts at ¶ 12.
Thus, the only remaining "clothing" that the officers had to remove was the medallion.  *Id.* at ¶ 13.  Butler also
contends that this is when the officers beat him.  *Id.*

. . . he was completely out of touch with reality and could not be deescalated." Def.'s Facts at ¶ 21; Pl.'s Facts at ¶ 21.

At approximately 10:45 a.m., medical staff observed Butler behaving irrationally in his cell and refusing to take medication. Def.'s Facts at ¶ 22; Pl.'s Facts at ¶ 22. The medical staff notified corrections officers that Butler needed to be "given a shot of medication." Def.'s Facts at ¶ 23; Pl.'s Facts at ¶ 23. Butler was very erratic and was unaware of who was talking to him. Def.'s Facts at ¶ 24; Pl.'s Facts at ¶ 24.

Eventually, Lieutenant Boushell called for the CERT team to remove Butler from his cell and, pursuant to PrimeCare orders, place him in a restraint chair. Def.'s Facts at ¶ 25; Pl.'s Facts at ¶ 25. Butler was removed from his cell, placed in a restraint chair, and given an injection of medication. Def.'s Facts at ¶ 26; Pl.'s Facts at ¶ 26. Butler remained in the chair for one hour, and Fliszar observed him several times. Def.'s Facts at ¶ 27; Pl.'s Facts at ¶ 27.

At 8:30 a.m. on June 21, 2012, Fliszar checked on Butler and noted that he claimed his ribs were broken and "repeatedly asked [her] to get him 'the McDonald's bag' that was on the food cart. [She] showed him that it was not a McDonald's bag, and he became agitated and refused to speak with [her] anymore." Def.'s Facts at ¶ 28; Pl.'s Facts at ¶ 28. She noted that Butler presented as easily agitated and delusional with disorganized thoughts, and continued to be acutely psychotic. Def.'s Facts at ¶ 29; Pl.'s Facts at ¶ 29. Later, Physician's Assistant Jennifer Mroz ("Mroz") saw Butler, and he complained about shoulder and rib pain. Def.'s Facts at ¶ 30; Pl.'s Facts at ¶ 30. Mroz also noted that he had contusions on his arms and shoulder. Def.'s Facts at ¶ 31; Pl.'s Facts at ¶ 31. Mroz ordered an x-ray to be completed the same day. Def.'s Facts at ¶ 32; Pl.'s Facts at ¶ 32.

On June 23, 2012, Butler was released from NCJ. Def.'s Facts at ¶ 35; Pl.'s Facts at ¶ 35. Upon release, Butler's girlfriend and an acquaintance, both registered nurses, noticed that Butler could not walk, was badly bruised, and was gasping for air due to broken ribs. Def.'s Facts at ¶¶ 38, 39; Pl.'s Facts at ¶¶ 38, 39. Two weeks later, on July 4, 2012, an x-ray indicated that Butler had broken ribs. Def.'s Facts at ¶ 36; Pl.'s Facts at ¶ 36.

Butler filed this lawsuit on June 17, 2014, against the County of Northampton ("the County") and various individuals employed at NCJ for the alleged beating he endured while incarcerated on June 20, 2012. Doc. No. 1. On January 8, 2016, the Honorable James Knoll Gardner granted summary judgment in favor of the individual defendants because Butler had not presented evidence demonstrating that any individual defendant was personally involved in the alleged wrongdoing. Opinion at 22-23, 24, Doc. No. 52. Judge Gardner also granted summary judgment as to the County because Butler had failed to establish that any of the individual employee defendants committed an underlying § 1983 violation. *Id.* at 28.

The plaintiff appealed from Judge Gardner's decision granting summary judgment and, on appeal, the Third Circuit affirmed Judge Gardner in all respects aside from his decision to grant summary judgment in favor of the County. *Butler v. Lamont*, 672 F. App'x 139, 141 (3d Cir. 2016). The Third Circuit held that Judge Gardner's reasoning was contrary to *Berg v. County of Allegheny*, 219 F.3d 261, 271-77 (3d Cir. 2000) (per curiam), in which the Third Circuit held that a municipality may be liable under § 1983 even if the plaintiff does not obtain a favorable judgment against the municipality's employees. *Id.* at 141-42. Thus, the Third Circuit remanded, instructing this court to "grant summary judgment only (a) if there was no violation of Butler's federal rights, or (b) if, even though there was, the violation did not arise from a Northampton County policy or custom." *Id.* at 142. Subsequent to the remand, Judge Gardner

passed away, and Chief Judge Petrese B. Tucker reassigned the case to this court. Doc. No. 58.

On June 29, 2017, the County filed a renewed motion for summary judgment that is now ripe for

review. Doc. No. 65.

## II.    DISCUSSION

### A.    Standard of Review

A district court "shall grant summary judgment if the movant shows that there is no

genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). Additionally, "[s]ummary judgment is appropriate when 'the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law.'" *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012)

(quoting *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). An issue of fact is

"genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986). A fact is "material" if it

"might affect the outcome of the suit under the governing law." *Id.*

The party moving for summary judgment has the initial burden "of informing the district

court of the basis for its motion, and identifying those portions of the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, which it

believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986) (internal quotation marks omitted). Once the moving party has met

this burden, the non-moving party must counter with "'specific facts showing that there is a

genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

(1986) (citation omitted); *see* Fed. R. Civ. P. 56(c) (stating that "[a] party asserting that a fact . . .

is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . .; or . . . [by] showing that the materials cited do not establish the absence . . . of a genuine dispute"). The non-movant must show more than the "mere existence of a scintilla of evidence" for elements on which the non-movant bears the burden of production. *Anderson*, 477 U.S. at 252. Bare assertions, conclusory allegations, or suspicions are insufficient to defeat summary judgment. *See Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982) (indicating that a party opposing a motion for summary judgment may not "rely merely upon bare assertions, conclusory allegations or suspicions"); *Ridgewood Bd. of Educ. v. N.E. for M.E.*, 172 F.3d 238, 252 (3d Cir. 1999) (explaining that "speculation and conclusory allegations" do not satisfy non-moving party's duty to "set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor"). Additionally, the non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Thus, it is not enough to "merely [] restat[e] the allegations" in the complaint; instead, the non-moving party must "point to concrete evidence in the record that supports each and every essential element of his case." *Jones v. Beard*, 145 F. App'x 743, 745-46 (3d Cir. 2005) (citing *Celotex*, 477 U.S. at 322). Moreover, arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Township of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985).

"When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v.*

*Potter*, 476 F.3d 180, 184 (3d Cir. 2007). The court must decide "not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and the court should grant summary judgment in favor of the moving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (citation omitted). Nonetheless, when one party's claims are "blatantly contradicted by the record, so that no reasonable jury could believe it," the court should not take those claims as true for the "purposes of ruling on a Motion for Summary Judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## B. Analysis

According to the Third Circuit's directive, this court should "grant summary judgment only (a) if there was no violation of Butler's federal rights, or (b) if, even though there was, the violation did not arise from a Northampton County policy or custom." *Butler*, 672 F. App'x at 142. The County contends that summary judgment is appropriate because Butler cannot show either a violation of a federal right or a municipal policy or custom that caused an alleged constitutional violation. *See* Mem. of Law in Support of the Mot. for Summ. J. of Def. ("Def.'s Mem.") at 3-16, Doc. No. 65.

### 1. Violation of a Federal Right

The County contends that Butler has presented no evidence that he was assaulted at all, and that the only record evidence to support that allegation is Butler's own deposition testimony, in which he admitted that he was suffering from hallucinations and delusions at the time of the alleged incident. Def.'s Mem. at 4-9. The fact that Butler was suffering from hallucinations, however, cannot discount as a matter of law his testimony that he was assaulted or the evidence

8

that his ribs were broken. Because the issue of whether Butler was assaulted by correctional officers on June 20, 2012, should be left to a fact-finder, the court will not grant summary judgment on that basis.

## 2. Policy or Custom

The County contends that, even assuming *arguendo* that Butler has produced adequate evidence of a constitutional violation, he has failed to demonstrate that a municipal custom, policy, or practice caused the alleged violation. Def.'s Mem. at 9-15. Butler contends that the County had a custom of failing to properly train and supervise its corrections officers, and that the failure to train and supervise caused his injuries. Pl.'s Mem. of Law in Opp. to Def.'s Renewed Mot. for Summ. J. at 12 ("Pl.'s Opp."), Doc. No. 69.

Under *Monell*, a plaintiff may hold a municipality liable under § 1983 only where the plaintiff establishes that (1) the municipality had a policy, (2) the policy amounted to deliberate indifference to the plaintiff's constitutional rights, and (3) the policy was the moving force behind the constitutional violation. *Vargas v. City of Philadelphia*, 783 F.3d 962, 974 (3d Cir. 2015) (citing *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 389-91 (1978)). A policy arises when a decision-maker possessing final authority issues an official proclamation, policy, or edict. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481 (1986) (plurality opinion). Customs are practices so permanent and well settled as to virtually constitute law. *Monell,* 436 U.S. at 691. A failure to train or supervise employees may constitute a policy, practice, or custom where the failure amounts to deliberate indifference. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). Thus, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary'" for such a claim to be cognizable. *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (citing *Board of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409

(1997)).  If the plaintiff successfully identifies a municipal policy or custom, he must then "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Bryan Cty.*, 520 U.S. at 404.

Based on the evidentiary record currently before the court, the County is entitled to summary judgment on Butler's *Monell* claim against it for three reasons.  First, the record is completely devoid of evidence relating to any NCJ policies, such as the training protocol for corrections officers or supervision requirements.  Butler has simply provided no evidence regarding training or supervision, and thus cannot succeed on a claim that NCJ's lack of training or supervision amounted to deliberate indifference.

Second, Butler has failed to present evidence of a pattern of similar constitutional violations as is "'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62.  In support of his contention that the County had constructive knowledge of constitutional violations similar to his own and remained deliberately indifferent, Butler has attached several exhibits to his response to the County's statement of facts: (1) a memorandum opinion in a case involving NCJ that the County settled, Pl.'s Facts at Ex. K; (2) three newspaper articles about NCJ, *id.* at Ex. G, I, J; and (3) then-County Executive John Stoffa's admission in another matter that he knew that information being transmitted to him by prison officials was incorrect, *id.* at Ex. H.  In his opposition, Butler also mentions, but does not attach, three other prior cases involving NCJ that the County eventually settled.  Pl.'s Opp. at 11-13.  As an initial matter, these exhibits and cases do not constitute "evidence" because they are not part of the summary judgment record—Butler never produced these documents to the County during discovery, and merely mentioned them in his opposition to the County's motion

10

or attached them to his response to the County's statement of facts.[2]  Def.'s Mem. at 12-13, 14.

For the sake of argument, however, the court will address each piece of "evidence," and explain

why Butler has not demonstrated a pattern of similar constitutional violations.

The four prior cases filed against the County involving misconduct at NCJ that Butler has

provided the court are *Mucha v. Boehm, et al.*, No. CIV. A. 11-624 (E.D. Pa.); *Tarboro v.*

*Northampton Cty.*, *et al.*, No. CIV. A. 10-964 (E.D. Pa.); *Farrell v. Northampton Cty., et al.*, No.

CIV. A. 11-3665 (E.D. Pa.); and *Buccini v. Northampton Cty., et al.*, No. CIV. A. 12-7039 (E.D.

Pa.).  Butler contends that the common thread that runs through each of those cases is a lack of

training and supervision, and thus that the jury can rely upon the cases to impute constructive

knowledge on County policymakers.  Pl.'s Opp. at 12.  Butler heavily relies on an opinion

denying summary judgment in *Farrell*.  *Farrell v. Northampton Cty.*, No. CIV. A. 11-3665, 2015

WL 4611298 (E.D. Pa. Aug. 3, 2015); *see also* Pl.'s Facts at Ex. K.  In that opinion, the court

cited *Tarboro* and *Mucha* in holding that a reasonable factfinder could rely on those lawsuits to

conclude that County officials were aware of a pattern of corrections officers facilitating inmate-

on-inmate attacks and that the procedures in place for supervising corrections officers were

deficient.  *Id.* at *6-7.  *Farrell*, however, involved allegations that NCJ corrections officers

conspired with inmates to have them attack the plaintiff.  *Id.* at *1-2.  *Tarboro* and *Mucha* also

specifically involved allegations that corrections officers facilitated inmate-on-inmate attacks.

*Id.* at *6.  Thus, those cases were substantially similar to *Farrell*'s facts, and could accordingly

provide notice of officer-facilitated inmate-on-inmate violence.  Butler's complaint, however,

involves corrections officers allegedly directly attacking an inmate, not corrections officers

facilitating an inmate-on-inmate attack, and thus *Farrell, Tarboro*, and *Mucha* do not constitute

---

[2] This is with the exception of one of the newspaper articles, which Butler produced in discovery.  Def.'s Mem. at
14.

11

evidence of a pattern of similar violations that would demonstrate deliberate indifference to deficient training or supervision.

In addition to *Farrell*, *Tarboro*, and *Mucha*, Butler cites *Buccini*, which involved a NCJ corrections officer beating an inmate in a shower because the inmate attempted to bring a cell phone into the jail. This case also does not constitute proof of a pattern of *similar* constitutional violations. *Buccini* involves an inmate who was allegedly unconstitutionally beaten for smuggling contraband into NCJ, and not an inmate who was beaten for refusing to remove clothing, refusing to remove a religious pendant, or for suffering from hallucinations and delusions. None of the prior litigation Butler provides involved anything similar to the alleged misconduct in Butler's case. Further, even if *Buccini* were similar to Butler's case, it is questionable that one prior similar lawsuit could constitute evidence of a *pattern* of similar constitutional violations sufficient to demonstrate deliberate indifference.

Butler also has attached three newspaper articles addressing misconduct at NCJ to his response to the County's statement of facts, and he argues that those articles also could lead a reasonable jury to conclude that County policymakers were aware of a pattern of similar constitutional violations and of deficient training and supervision. Pl.'s Opp. at 16. The court disagrees. Two of the three articles described a contraband smuggling operation, rather than assaults on inmates who are refusing to remove religious relics or experiencing a psychotic episode. *See* Pl.'s Facts at Ex. G, I. The third is an article summarizing the County's settlement of the *Buccini* case, which, as addressed above, is not similar to Butler's case and does not constitute evidence of a *pattern* even if it were similar. *See* Pl.'s Facts at Ex. J.

Butler also provided the court with an excerpt from County Executive Stoffa's deposition in another case. *See* Pl.'s Facts at Ex. H. In that case, corrections officers were suing the County

because of a toxic mold infestation at NCJ. *See Ferraro v. Buskirk, et al.*, No. CIV. A. 08-5513 (E.D. Pa.). When Stoffa testified that he was getting incorrect or biased information from prison officials, he was referring to information he would get from them in investigating the litigation. He testified that the bias likely came from "20 years of working with each other" and "[p]erhaps not being objective" since the prison officials were parties in the case. Pl.'s Facts at Ex. H at 37:1-11. It is unclear how deposition testimony in a case about a mold infestation constitutes evidence of a pattern of constitutional violations involving corrections officers beating inmates who are experiencing psychotic episodes or refusing to remove religious pendants. As the Supreme Court emphasized in *Connick* and *Bryan City*, a pattern of *similar constitutional violations*, not a pattern of *any misconduct*, by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train. *Connick*, 563 U.S. at 62; *Bryan Cty.*, 520 U.S. at 409.

Third, Butler has provided no evidence that the failure to train *caused* his constitutional injury. "[F]or liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury. Thus in the case at hand, respondent must still prove that the deficiency in training actually caused the [violation]." *Canton*, 489 U.S. at 392. Butler has not identified what sort of training or supervision NCJ lacks—he has not provided any expert testimony, nor has he deposed any NCJ administrators. *See Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1030 (3d Cir. 1991) ("A § 1983 plaintiff pressing a claim of this kind must identify a failure to provide *specific* training that has a causal nexus with his or her injury . . . ." (emphasis added)). Butler simply cannot point to evidence in the record that the officers assaulted him during his psychotic episode because they were trained to do so or because they lacked proper supervision, and he merely contends that the prior litigation and news articles

13

demonstrate that the County knew its corrections officers were generally not properly trained or supervised. This is insufficient to establish causation for failure-to-train or failure-to-supervise liability. As the Supreme Court stated in *Canton*:

> [T]he focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.

489 U.S. at 390-91. If the mere fact that NCJ has been accused of some type of misconduct in the past were enough to establish *Monell* liability, it "would result in de facto *respondeat superior* liability on municipalities," which *Monell* itself rejected. *Id.* at 392. Any future plaintiff would be able to impose municipal liability on the County for any alleged misconduct at NCJ merely by pointing to the fact that the County has been previously sued on behalf of NCJ. Accordingly, Butler has failed to establish causation sufficient to allow his *Monell* claim to survive summary judgment.

## III. CONCLUSION

The court need not decide whether Butler has presented enough evidence to allow a reasonable juror to find that his constitutional rights were violated because he has not satisfied his burden of establishing facts sufficient to show that a municipal policy or custom caused the alleged violation. He has provided no evidence to suggest a pattern of constitutional violations similar to his own incident, and has merely provided the court with prior cases involving some form of misconduct at NCJ that the County settled. Subjecting the County to municipal liability simply because it has been sued before "would open municipalities to unprecedented liability under § 1983." *Canton*, 489 U.S. at 391. Thus, the court will grant the County's motion for summary judgment.

A separate order follows.

BY THE COURT:

/s/ *Edward G. Smith*
EDWARD G. SMITH, J.